Dickman, J.
Upon the organization of the Cincinnati Lumber Company, it purchased for the purposes of its business, certain' mill property, and assumed the payment of an incumbrance thereon, which, on the 1st of June, 1870, amounted to about' six thousand dollars. At the last named date, John N. McDonnell was president of the company, Carter Gazlay its secretary, and Andrew F. Baum, of the firm of Carrier & Baum, was largely interested in the company as a creditor, and though not appearing on the books as a stockholder, was the owner of stock which was held by his partner. The incumbrancer on the mill property pressed the payment of his claim, and Gazlay, acting for all parties in interest, applied to Mary A. McDonnell, the wife of John N. McDonnell, to induce her to give a mortgage on her separate real estate, for the purpose of raising the required sum. Mrs. McDonnell was, at the time, in very feeble health, and easily influenced by her husband, and it being represented to her by him and by'Gazlay, that it would injure the credit of the- Lumber Company to put its name on any more paper to be circulated in the market commercially, and that it was necessary for her husband’s benefit to mortgage her separate property to pay off the company’s debt, she was prevailed upon to join with her husband in executing a mortgage upon her real estate, to secure the payment of a note for six thousand dollars, bearing date June 1st, 1870, and made payable in two years after date to the order of Andrew F. Baum.
No pecuniary consideration was ever paid to Mrs. McDonnell, and no money was advanced by the payee to the maker of the note. The note and mortgage were both made solely for the accommodation of the Lumber Company; and it was the design of the parties to the instruments, that Mrs. McDonnell’s real estate should occupy the position of a surety only, for such amount as might be'raised by means of the note and mortgage to pay off the incumbrance on the company’s property. Although it was represented to Mrs. .McDonnell, that the credit of the Lumber Company might be impaired by putting its paper upon the market, *659 we do not find that she imposed it as a condition, that her mortgage should be used or negotiated only in a specified manner. We think that the main object to be subserved was, to furnish a surety for the amount that might be obtained for the benefit of the company, whether Baum advanced the money himself, or sold the note and mortgage, or lodged them as collateral security for a loan to be made directly to the company. Such seems certainly to have been the understanding of Baum, as evidenced by his action and dealing in reference to the McDonnell mortgage ; for, on the 8th of June, 1870, the Lumber Company having drawn its note for six thousand dollars, payable to the order of John N. McDonnell and Matthew Hall, in one year from date, and indorsed by Baum himself, he procured the same to be discounted by the Peoples’ Insurance Company of Pittsburgh, transferred to that company the McDonnell note and mortgage as collateral security, and applied the proceeds realized, to wit, $5,400, in discharge of the incumbrance on the Lumber Company’s property.
There can be no dispute as to the relation of suretyship which Mrs. McDonnell’s property bore to the note made by her husband to Andrew F. Baum. It was competent for her to pledge or mortgage her separate property for her husband’s debt, and upon doing so, such property, became a surety or guarantor, and was subject to be discharged by anything that would discharge a surety or guarantor who was personally liable. And it has been held, that the fact that a mortgagee has no actual knowledge of the wife’s ownership of the mortgaged premises, and of the resulting relationship of principal and surety between the husband and wife, is immaterial, where the title is on record, as he thereby becomes chargeable with both knowledge of the title and the legal consequences resulting therefrom. Bank of Albion v. Burns, 46 N. Y., 170. But, we are satisfied from the conclusions of fact found by the district court, and from an examination of the testimony embodied in the bill of exceptions, that the insurance company at the time it made the loan to the Lumber Company, knew the true *660 relation of all the parties to the transaction, and the nature of the understanding between them. The Insurance Company, we think, when it took the McDonnell note and mortgage as collateral security to a note for the same amount, dated only a few days thereafter, and drawn by the Lumber Company to the order of McDonnell its president, and Hall one of its members, was cognizant of the fact, that the note and mortgage were designed by the parties thereto for the accommodation of the Lumber Company, and to serve as surety for the amount which it was proposed to raise by loan for the benefit of that company. In reference therefore to the indebtedness of that company to the Insurance Company, the separate property of Mrs. McDonnell should hold the position of a surety, and be entitled to'the benefit of the rules protecting the surety from prejudice through the creditor’s dealing with the principal debtor.
Applying the well established rules for the protection of the rights of sureties, the conduct of the Insurance Company released the property of Mrs. McDonnell from the operation of her mortgage. Without the knowledge or consent of Mrs. McDonnell to the substitution, renewals and extensions hereinafter mentioned, when the note of the Cincinnati Lumber Company of the 8th of June, 1870, payable in one year, matured, it was surrendered, and a new note, at one year, signed by the company and indorsed by Baum, was taken in its place. This last note was held until June 24th, 1871, when it was surrendered, cancelled and marked “ paid ” in red ink, upon the books of the Insurance Company. On the same day, a new note, substituted for and in extinguishment of the obligation of the Lumber Company, dated June 8th, 1871, and payable in one year, was executed to the Insurance Company by Carrier & Baum and indorsed by Robert Campbell; and this note, after being twice renewed was, by a binding agreement between creditor and principal, extended to June 19th, 1875. Conceding to Mrs. McDonnell and those claiming under her, the rights of a surety, when the Lumber Company’s note was cancelled and marked “paid,” and a new *661 note substituted in its stead, the mortgage executed by her was discharged. The evidence, in our judgment, shows that the note of Carrier & Baum was given in satisfaction of the original obligation, and that the surety was thereby released. After the surrender of the note of the Lumber Company, the Insurance Company never preferred any claim upon it or any note given in its stead, against the Lumber Company or its assignee; nor against John N. or Mary A. McDonnell upon the note and mortgage in litigation ; and presented no claim to their administrator after their decease. Letcher v. Bank of the Commonwealth, 1 Dana, 82 ; Castleman v. Holmes, 4 J. J. Marsh., 1; Bell v. Martin, 3 Harrison, 167; Farmers & Mechanics Bank v. Kercheval, 2 Mich., 504. When Carrier & Baum took upon themselves the liability of the principal debtor, and the Insurance Company, with knowledge of that fact, agreed to accept them as debtors, and cancelled the obligation of the Lumber Company, a novation resulted, which operated to release the McDonnell mortgage. Burge on Suretyship, b. 2, c. 5; 2 Pars, on Contr., 18; Sneed v. White, 3 J. J. Marsh., 525.
The McDonnell mortgage having subserved its intended purpose — known to the Insurance Company — of raising money for the use of the Lumber Company, it should have been surrendered when the Carrier & Baum note was accepted in satisfaction of the original obligation. And as between Mrs. McDonnell and Andrew F. Baum, the mortgage should have been cancelled, and her property released from its operation. In the year 1871, when the Lumber Company became insolvent, Baum, for a valuable consideration, agreed to return and cancel the mortgage. And in the year 1872, when John N. McDonnell executed to Carrier &' Baum a mortgage on his own property — his wife joining in a release of dower — in settlement of his pro rata share of the Lumber Company’s liabilities, there was an express understanding and agreement with Baum, that the mortgage by Mrs. McDonnell should be delivered up and cancelled according to his previous agreement. Though *662 not delivered up and cancelled, we are of opinion, that the mortgage was fully settled and satisfied by John N. McDonnell during his life, in the final settlement of the affairs of the Cincinnati Lumber Company, and that neither Andrew F. Baum nor the Peoples’ Insurance Company have now any interest or claim in that mortgage.
It follows, therefore, that the judgment of the district court must be affirmed.

Judgment accordingly.